IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHARLES H,[1]

   Plaintiff,

vs.

COMMISSIONER OF SOCIAL
SECURITY,

   Defendant.

Civil No. 17-cv-1117-CJP[2]

## MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for benefits In June 2013, alleging disability beginning on February 15, 2011. After holding an evidentiary hearing, ALJ Stephen M. Hanekamp denied the application in a written decision dated June 29, 2016. (Tr. 16-27). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issue Raised by Plaintiff

---

[1] In keeping with the court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 23.

1

Plaintiff raises the following point:

1. The ALJ erred in giving too little weight to part of the opinion of his treating psychiatrist, Dr. Chalfant.

## **Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the

> impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial

evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Hanekamp followed the five-step analytical framework described above. He determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. He was insured for DIB through December 31, 2016. He found that plaintiff had severe impairments of major depressive disorder, single episode; mild panic disorder without agoraphobia; and alcohol dependence, uncomplicated.[3] These impairments did not meet or equal a listed impairment.

The ALJ found that plaintiff had the following residual functional capacity

---

[3] "An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C.A. § 423(d)(2)(C). Because the ALJ found that plaintiff was not disabled, he was not required to determine whether plaintiff's alcohol dependence was "material." See, SSR 13-2p, 2013 WL 1569623.

4

(RFC):

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: He can do simple routine tasks that can be performed independently and that involve working primarily with things rather than other people. Beyond that, any social interaction needs to be occasional and superficial with co-workers and supervisors, and no direct interaction with the general public. Superficial is defined as no negotiation, arbitration, mediation, confrontation of others or supervision of others. Work must be in a non-public setting. No dangerous unprotected heights, no dangerous unprotected moving machinery.

Based on the testimony of a vocational expert, the ALJ found that plaintiff could not do his past relevant work, but he was not disabled because he was able to do other jobs which exist in significant numbers in the local and national economies.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the point raised by plaintiff and is confined to the relevant time period.

1. **Agency Forms**

Plaintiff was born in 1975 and was almost 36 years old on the alleged onset date. (Tr. 155). He had worked as a journeyman insulator from 1997 through 2011, and as a professional skydiver from 2008 through 2011. (Tr. 158).

In July 2013, plaintiff submitted a report stating that he was unable to work because of PTSD and manic depression, and because he did not work well with others. (Tr. 164).

2. **Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing in March 2016. (Tr. 34).

Plaintiff testified that his job as an insulator ended when he was told to work in a high area that he thought was unsafe. He lost control of his anger. He had also worked as a skydiving instructor, doing tandem dives, on the weekends. He said he last went skydiving in January 2011 because "everything became hard to do" and it did not feel safe for him anymore. He said he lost his nerve. (Tr. 37-39).

Plaintiff said he was unable to work because he had panic attacks, mood swings, and crying spells. He had a couple of panic attacks per day. When he was under stress, a panic attack might last for an hour. For about the first 18 months after he became disabled, he hardly left the house because of panic attacks and anxiety attacks. It was more manageable at the time of the hearing. He avoided some of the places that were stressors. He had been seeing a psychiatrist and a counselor for about four years. (Tr. 40-43).

Plaintiff testified that he had "issues" with alcohol in the past. He stopped drinking two weeks before the hearing. (Tr. 48).

A vocational expert (VE) also testified. The ALJ asked the VE a hypothetical question which comported with the ultimate RFC assessment. The VE testified that this person could do the jobs of cleaner II, laundry worker II, and washer (vehicles and equipment). (Tr. 53-54).

3.   **Medical Treatment**

Plaintiff was treated at Psychiatric Services of Southern Illinois from March

2011 through February 2016. He saw Dr. Jeffrey Chalfant, a psychiatrist, about once a month. Plaintiff also saw counselors at that office on a regular basis. (Tr. 314-487). Dr. Chalfant diagnosed him with panic disorder without agoraphobia and major depressive disorder, recurrent, mild. He prescribed various medications for him, including Prozac, Wellbutrin, and Risperidone. (Tr. 423-424).

At the first visit with Dr. Chalfant, plaintiff said he "had a meltdown" at work in mid-March when he became angry because "it was raining and they had not called it a rain day." Plaintiff left work and "when he was leaving MF'ed everyone on the way out." A few days later, there were lay-offs at work and he was included. He said that he had felt depressed his whole life. He had been a heavy drinker in the past but had been sober for 8 years. He was prescribed Celexa and Prazosin because of nightmares. (Tr. 314-315). He was switched to Wellbutrin the next month because of side effects with Celexa. (Tr. 316).

In May 2011, plaintiff told a counselor that he had relapsed on alcohol when his mother died. He said that people at his skydiving job remarked that he had changed since he started drinking again. The counselor advised him to "either tell Dr. Chalfant his true drinking behavior or stop drinking altogether." (Tr. 318).

In June 2011, plaintiff told a counselor that he was working more at the skydiving job to bring more income into the household. (Tr. 320). In July, he said he had relapsed in the past month on his drinking and gambling. His anxiety was high. The counselor recommended that he stop drinking and return to taking the medications that Dr. Chalfant prescribed. (Tr. 322-323). He was still doing

7

skydiving in July, but could not pay the bills on it because there was more competition. The counselor again advised him to stop drinking and to return to taking his medication. (Tr. 324).

In August 2011, plaintiff told Dr. Chalfant that he had been doing well but drank alcohol and because very irritable and stopped taking his medication. Dr. Chalfant told him to abstain from alcohol and restart Zoloft. (Tr. 326).

In September 2011, plaintiff told his counselor that he was in the process of creating a skydiving business and was planning on training another guy to work with him. He agreed that his thinking was much clearer when he was sober. (Tr. 330). The next month, he was considering giving skydiving lessons in Florida over the winter. (Tr. 333).

Dr. Chalfant prescribed Prozac in February 2012 because of side effects from Zoloft. (Tr. 335). In July, plaintiff told the doctor that thing were going better and he had been less irritable and more controllable. (Tr. 345). In October, he was doing okay but was having problems sleeping. The skydiving company was opening up another jump site, so he might have more work. (Tr. 351). In November he said he was not going to be working at skydiving because "the partner wanted to[o] much." He was doing okay but was gaining weight. (Tr. 353). He was doing well in December and had lost weight since a medication change. (Tr. 355).

In February 2013, plaintiff told Dr. Chalfant that he was more stressed and anxious and was drinking more. The doctor recommended AA, but he refused. His Prozac was increased. (Tr. 357). In May 2013, plaintiff told Dr. Chalfant that

"his business has not been doing too well at the flea market." (Tr. 366).

In November 2013, plaintiff told Dr. Chalfant that he had stopped drinking in September 2013, after having gone on a "bender." He felt less agitated. He had no problems with his medication and felt his anxiety was manageable. (Tr. 409-410). In January 2014, he reported that he had felt more depressed and had problems with energy and motivation, as well as anxiety. His dosage of Prozac was increased. (Tr. 412-414). Seroquel was added in February 2014, and he reported that he was doing better the next month. (Tr. 417-418).

Plaintiff apparently did not see Dr. Chalfant between February 2014 and March 2015. Plaintiff reported that he was doing okay, although he was stressed. (Tr. 434). In May 2015, his dosage of Risperidone was increased because of continued irritability. (Tr. 431). In July and October 2015, plaintiff told Dr. Chalfant that he was doing all right and he had no problems with his medication. (Tr. 425, 428). In January 2016, he was doing okay but had some stress. He had gained weight because he had been going out to eat a lot with his son before his son went into the military. (Tr. 422).

4. **Dr. Chalfant's opinion**

Dr. Chalfant assessed plaintiff's ability to do mental work-related activities by filling out a form at the request of plaintiff's counsel on July 8, 2013. (Tr. 285-296). The doctor indicated that plaintiff had marked and extreme limitations in a number of areas. He indicated that plaintiff had moderate imitations in ability to remember locations and work-like procedures; understand and remember very short and simple instructions; make simple work-related decisions; ask simple

questions or request assistance; and be aware of normal hazards and take appropriate precautions.

## Analysis

Plaintiff argues that the ALJ erred in weighing Dr. Chalfant's opinion because he did not explain why he discounted the moderate limitations he assessed.

Plaintiff acknowledges that the ALJ explained why he discounted the marked and extreme limitations assessed by Dr. Chalfant. He does not argue that the ALJ erred in discounting those marked and extreme limitations. Rather, he argues that "nowhere in his analysis did the ALJ discount the moderate limitations in Dr. Chalfant's opinion." Doc. 14, p. 12.

Plaintiff's argument overlooks the ALJ's very clear explanation of why he discounted the moderate limitations assigned by Dr. Chalfant. The ALJ explained:

> The claimant's activities doing tandem skydiving with customers, selling items at a flea market, and gambling in casinos are not consistent with moderate limitations in understanding, remembering and carrying out even short and simple instructions, remembering locations and work-like procedures, being aware of normal hazards and taking precautions.

Tr. 24.

Obviously, the ALJ was not required to credit Dr. Chalfant's opinion even though he was a treating doctor; "while the treating physician's opinion is important, it is not the final word on a claimant's disability." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996)(internal citation omitted). A treating doctor's medical opinion is entitled to controlling weight only where it is supported by medical findings and is not inconsistent with other substantial evidence in the record. *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016), citing *Clifford v.*

*Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

The ALJ is required to consider a number of factors in deciding how much weight to give to a treating doctor's opinion. The regulations refer to a treating healthcare provider as a "treating source." The applicable regulation, 20 C.F.R. § 404.1527(c)(2), provides:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. <u>If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.</u> [Emphasis added]

If the ALJ decides not to give the opinion controlling weight, he is to weigh it applying the factors set forth in § 404.1527(c)(1)-(6). Supportability and consistency are two important factors to be considered in weighing medical opinions. In a nutshell, "[t]he regulations state that an ALJ must give a treating physician's opinion controlling weight if two conditions are met: (1) the opinion is supported by 'medically acceptable clinical and laboratory diagnostic techniques[,]' and (2) it is 'not inconsistent' with substantial evidence in the record." *Schaaf v. Astrue,* 602 F.3d 869, 875 (7th Cir. 2010).

Plaintiff does not take issue with the ALJ's weighing of the marked and extreme limitations assigned by Dr. Chalfant. He tacitly admits that the ALJ had good reason to discount those limitations. The ALJ explained in detail why he

11

rejected the moderate limitations as well as the marked and extreme limitations. Plaintiff ignores the explanation with regard to the moderate limitations.

In fact, the ALJ's explanation of why he rejected the moderate limitations was sufficient. As he pointed out, plaintiff engaged in activities after his alleged onset date that were inconsistent with those moderate limitations. His ability to give skydiving lessons, sell items at a flea market, and gamble in casinos undercuts the validity of the moderate limitations assigned by Dr. Chalfant. Plaintiff does not dispute that proposition or deny that he engaged in those activities.

In light of the deferential standard of judicial review, the ALJ is required only to "minimally articulate" his reasons for accepting or rejecting evidence, a standard which the Seventh Circuit has characterized as "lax." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). The Court finds that ALJ Hanekamp easily met the minimal articulation standard here.

This is not a case in which the ALJ failed to discuss evidence favorable to the plaintiff or misconstrued the medical evidence. Rather, after reviewing the evidence in detail, the ALJ concluded that Dr. Chalfant's opinion was contrary to the evidence regarding plaintiff's activities. Plaintiff has not identified a sufficient reason to overturn that conclusion.

Even if reasonable minds could differ as to whether plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Elder v. Astrue*, 529 F.3d at 413.

## **Conclusion**

After careful review of the record as a whole, the Court is convinced that ALJ Hanekamp committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying plaintiff's application for disability benefits is **AFFIRMED.**

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE:   August 15, 2018.**

                                                    s/Clifford J. Proud
                                                    **CLIFFORD J. PROUD**
                                                    **UNITED STATES MAGISTRATE JUDGE**